ORIGINAL

Case 1:10-cv-09701-LLS   Document 115   Filed 05/23/16   Page 1 of 16

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/23/16

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
904 TOWER APARTMENT LLC and MADISON
APARTMENT 905 LLC,

            Plaintiffs,                    10 Civ. 9701 (LLS)

       - against -                         OPINION AND ORDER

THE MARK HOTEL LLC, MARK HOTEL
SPONSOR LLC, THE MARK HOTEL OWNERS
CORP., ALEXICO GROUP, LTD., 205
EAST 45 LLC, SIMON ELIAS, IZAK
SENBAHAR and JOHN DOES 1-10

            Defendants.
- - - - - - - - - - - - - - - - - -X
```

Plaintiffs 904 Tower Apartment LLC and Madison Apartment 905 LLC move for summary judgment against Mark Hotel Sponsor LLC, Mr. Simon Elias, and Mr. Izak Senbahar for breach of contract, damages in the amount of approximately $2,593,750 plus prejudgment and postjudgment interest, and for dismissal of Mark Hotel Sponsor LLC's and Mark Hotel LLC's (collectively, "Mark Hotel's") counterclaims for legal fees and tortious interference.

All named defendants move for summary judgment dismissing all of plaintiffs' claims, and granting defendant Mark Hotel summary judgment on its counterclaims.

For the following reasons, both motions for summary judgment are denied.

-1-

**BACKGROUND**

Unless otherwise stated, the following facts are taken from each party's Local Rule 56.1 Statement of Undisputed Facts.

The Mark Hotel project involved the gutting and renovation of a historic building in the Upper East Side of Manhattan for conversion into a hotel and luxury cooperative apartments. This action arises out of the proposed sale of two cooperative apartments (units 904 and 905) of the Mark Hotel.

After a series of proceedings involving pleadings (three complaints, including amendments) of seven claims, four counterclaims, and twelve affirmative defenses, the claims remaining in this action as a whole are comprehensible. Plaintiffs want the return of their deposits (totaling $2,593,750) for defendants' claimed breach of contract, failure of performance, and fraud in rescission proceedings before the New York Attorney General. Defendants counterclaim for recovery of their legal fees and costs defending this litigation, and damages for plaintiffs' alleged tortious interference with their contracts and relationship with their prospective purchasers and lender.

The issues addressed in these cross-motions for summary judgment are narrower. They are confined to plaintiffs' breach of contract claim, and defendants' counterclaims for legal fees and tortious interference.

**APPLICABLE LAW**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986) (movant must "demonstrate the absence of a genuine issue of material fact"). The movant's materials "must be viewed in the light most favorable to the opposing party." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970). "When cross motions for summary judgment are made, the standard is the same as that for individual motions. The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." United Indus. Corp. v. IFTE plc, 293 F. Supp. 2d 296, 299 (S.D.N.Y. 2003) (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (holding "The same standard applies where, as here, the parties filed cross-motions for summary judgment")).

**1.**

As a threshold matter, defendants argue that plaintiffs' pursuit of their breach of contract claim is barred because it was already adjudicated against them ("res judicata") by the New

York Attorney General's denial of their 2009 application for rescission of their purchase agreements and return of their down payments. On a full analysis of that argument in an earlier opinion, I ruled that the proceeding was not sufficiently quasi-judicial to be preclusive, see 904 Tower Apartment LLC v. Mark Hotel LLC, 853 F. Supp. 2d 386, 392-94 (S.D.N.Y. 2012). Defendants now contend that analysis should be re-evaluated in light of subsequent New York court determinations that the Attorney General's determinations are entitled to be treated as res judicata.[1] See CRP/Extell Parcel I, L.P. v. Cuomo, 101 A.D.3d 473, 474 (App. Div. 1st Dep't 2012); Coffey v. CRP/Extell Parcel I, L.P., 117 A.D.3d 585, 585 (App. Div. 1st Dep't 2014), lv. dsmssd., 24 N.Y.3d 934, 17 N.E.3d 1142, 993 N.Y.S.2d 545 (Mem) (2014); Bevilacqua v. CRP/Extell Parcel I, L.P., 126 A.D.3d 429, 429 (App. Div. 1st Dep't 2015); Sapphire Inv. Ventures, LLC v. Mark Hotel Sponsor LLC, 131 A.D.3d 821, 822 (1st Dep't 2015).

Accepting[2] the New York State courts' treatment of its Attorney General's decision as res judicata, there remains a

---

[1] The Attorney General's denial was affirmed by the Supreme Court, New York County in an Article 78 proceeding, 904 Tower Apt. LLC v. Cuomo, No. 105022/2010, 2014 NY Slip Op 33493(U), 2014 N.Y. Misc. LEXIS 5981 (Sup. Ct. N.Y. Co. May 23, 2014). The parties have not argued that court decision is res judicata.

[2] With reservations reflecting their absence of reasoning and nonperformance of the analysis required by Josey v. Goord, 9 N.Y.3d 386, 880 N.E.2d 18, 849 N.Y.S.2d 497 (2007).

genuine dispute of material fact whether plaintiffs at that time knew of or could have litigated defendants' purportedly material nondisclosures regarding the Mark Hotel project's financing, which precludes granting summary judgment in favor of defendants on res judicata grounds.

Plaintiffs now argue for rescission because of defendants' alleged nondisclosure of loan defaults and the failure to pay sums due at maturity, and the ad-hoc loan extensions that were not supported by guarantees--information they allege was not available to them or reasonably ascertainable at the time of the Attorney General's proceeding. They say:

> It was neither known at the time nor presented in this application that (1) all the project's loans had been in default due to failure to pay at maturity for six weeks prior to this; (2) defendants had received letters indicating defaults on loans for two other interrelated projects financed by the same lender; (3) defendants had received a notice of default from the mezzanine lender; (4) the maturity dates were extended only to May 31, 2009 on which date additional default was certain; and (5) Defendants had in fact defaulted on May 31, 2009 and were still in default of those loans at the time of the application.

Plaintiffs' Counterstatement to Defendants' Local Rule 56.1 Statement ¶ 99. Defendants argue that plaintiffs' application was:

> premised on most (but not all) of the issues that plaintiffs have asserted in this action, including allegations based on non-disclosure of information about the financing of the Mark Hotel renovation project, non-designation of the Suites for stays of unlimited duration, non-formation of Owners Corp., the

> physical condition of the Suites and the Building, expiration of the Offering Plan, failure to reschedule the closing on reasonable notice and failure to allow a reasonable inspection.

Defendants' Local Rule 56.1 Statement ¶ 99.

As stated in Sapphire (131 A.D.3d at 821):

> To the extent plaintiffs' action is based on defendants' alleged failure to disclose the financial entanglement between the Mark Hotel and two other distressed hotels, it is not barred by the doctrines of res judicata or collateral estoppel. The claims and issue of financial entanglement were never raised or decided in the AG's proceeding, nor could they have been raised there, as plaintiffs did not discover the evidence of financial entanglement until after the AG issued its determination.

The dispute whether plaintiffs knew of or could have raised the nondisclosures as grounds in their application to the Attorney General for rescission precludes granting summary judgment in favor of defendants on res judicata grounds.

**2.**

Both parties move for summary judgment on plaintiffs' breach of contract claim as a matter of law.

On January 31, 2008, plaintiff 904 Tower Apartment LLC entered into a purchase agreement with defendant Mark Hotel Sponsor LLC to purchase a cooperative share for $8.45 million, placing a deposit of $2,112,500 into escrow with Mark Hotel Sponsor LLC's attorneys, Kramer Levin Naftalis & Frankel LLP. That same day, plaintiff Madison Apartment 905 LLC entered into a purchase agreement with Mark Hotel Sponsor LLC to purchase the

share corresponding to the adjacent apartment for $1.925 million, placing a deposit of $481,250 into escrow with Kramer Levin Naftalis & Frankel LLP. Altogether, those deposits totaled $2,593,750.

The purchase agreements plaintiffs executed with Mark Hotel Sponsor LLC incorporated the offering plan and its amendments.

Making complaints about the condition of the premises, plaintiffs failed to appear or close on April 23, 2009 and Mark Hotel Sponsor LLC declared them in default. The purchasers of two other cooperative apartments closed on their purchases before May 1, 2009.

The parties agree that Sponsor had a duty to disclose material changes to the operating plan and that failure to do so would permit plaintiffs to rescind their purchases. They disagree over whether the missed payments, refinancing, or the mezzanine lender's financial problems were material.

A fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." State v. Rachmani Corp., 71 N.Y.2d 718, 726, 525 N.E.2d 704, 708, 530 N.Y.S.2d 58, 62 (1988) (quotations omitted).

Courts have granted summary judgment finding as a matter of law a sponsor's default was a material nondisclosure:

-7-

> The failure to disclose the sponsor's inability to meet mortgage payments, the commencement of an action by various unit owners, and the failure of certain unit owners to pay the common charges, were unquestionably "material" non-disclosures, i.e., giving rise to a substantial likelihood that a reasonable shareholder would consider it important. This is so even if the defendants believed in good faith that the mortgage would be extended, or the action settled.

State v. Manhattan View Dev., Ltd., 191 A.D.2d 259, 259, 595 N.Y.S.2d 13, 13 (App. Div. 1st Dep't 1993) (citing Rachmani). The facts in Manhattan View were summarized by the trial court (State v. Manhattan View Dev., Ltd., No. 43017/90, 1991 WL 11764815 (Sup. Co. N.Y. Co. Dec. 24, 1991):

> The second cause of action is based on allegations that the sponsor failed to disclose its default on mortgage obligations.
>
> Defendants do not dispute that the sponsor was in arrears, but claim that the bank was working with them and had not declared the sponsor in default of the loan.
>
> The sponsor initially defaulted on its mortgage payments in October 1988. The bank's January 11, 1989 letter to Delmar clearly set forth the sponsor's numerous defaults and does not include an agreement to extend the loan an additional six months. In light of the January 1989 letter, it is simply incredible that the sponsor "did not believe it was in default" as defendants allege.
>
> Any reasonable person making a decision on whether to purchase a unit in the Building would certainly wish to know of the sponsor's inability to satisfy its mortgage obligations. Such information is clearly of significance to a prospective purchaser.
>
> The sponsor was in default and that fact should have been disclosed (see, 13 NYCRR 20.5[c][3][vii], [4]).

>   Therefore, plaintiff is entitled to summary judgment
>   on its second cause of action.

Likewise, in hearing a petition for a writ of habeas corpus involving a defendant convicted of violating the Martin Act, the court stated: "It is beyond dispute that failure to make mortgage and maintenance payments is a material change of facts and circumstances." Lurie v. Wittner, 75 F. Supp. 2d 117, 119-20 (S.D.N.Y. 1999) (citing Rachmani). In that case, the defendant had been sentenced "for engaging in a deliberate scheme to defraud the minority shareholders of five residential cooperative buildings (co-ops), which were sponsored and managed by the defendants." People v. Lurie, 249 A.D.2d 119, 119, 673 N.Y.S.2d 60, 60 (App. Div. 1st Dep't 1998). The court found (id.):

>   Defendant Lurie systematically failed to make the
>   payments on the mortgages underlying the five co-ops,
>   failed to make the maintenance payments to the co-op
>   for his unsold shares and failed to pay bills for
>   water, oil and taxes. By October 1990, Lurie owed
>   $1.8 million in mortgage, maintenance and other fees
>   to the five co-ops. Despite this enormous debt, Lurie
>   consistently paid himself a $15,000 monthly management
>   fee from the co-op's bank accounts, resulting in
>   income to defendants of over $435,000.

Both of those cases granting summary judgment on materiality are easily distinguished from the record in this case. In Mountain View, the non-disclosure involved a default in which the bank had unequivocally refused to extend the maturity date or refinance the debt. In Lurie, the defendant

-9-

failed to disclose a deliberate scheme to defraud involving a default, missed maintenance and other fee payments, and his own personal unjust enrichment.

In this case, the record is inconclusive as to whether the defendants' refinancing would have significantly altered the "total mix" of information available to the plaintiffs. Plaintiffs contend that defendants' missed payments and refinancing paints a grim picture of an ambitious real estate project on the verge of financial ruin.  Defendants argue that the refinancing showed Anglo Irish Bank Corporation (the project's financier) was confident enough in the project's success--despite deteriorating worldwide financial conditions--to extend the loans' maturity and even extend further financing. Defendants also point to the project's completion without bankruptcy or its lenders having accelerated any loan repayment as showing that the project's solvency was never in question; they point also to a subordination and non-disturbance agreement as a "crucial protection that Sponsor provided to co-op purchasers in the case" (D. Opp. (Dkt. No. 102) at 23, n. 9). The parties' submissions make clear that there are genuine and material disputes regarding the impact of these circumstances on the "total mix" of information plaintiffs might have considered, and whether their nondisclosure was a material omission.

Accordingly, summary judgment for either side on the breach of contract claim is denied.

**3.**

Defendants next move for summary judgment on plaintiffs' claims against all defendants other than Mark Hotel Sponsor LLC, arguing that the plaintiffs' contract was only with that defendant.

Generally, a party who is not a signatory to a contract cannot be held liable for its breach.  See TransformaCon, Inc. v. Vista Equity Partners, Inc., No. 15 Civ. 3371 (SAS), 2015 WL 4461769, at *3 (S.D.N.Y. July 21, 2015).  New York law recognizes an exception to this general rule:  "Where a parent corporation manifests 'intent to be bound' by a contract, the parent can be considered the alter ego of the subsidiary and therefore bound by the contract."  Id. (quoting Horsehead Indus. v. Metallgesellschaft AG, 239 A.D.2d 171, 172, 657 N.Y.S.2d 632, 633 (1st Dep't 1997)).  In addition, contractual liability can be imposed on a non-signatory by "piercing the corporate veil." "The doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation."  Morris v. N.Y. State Dep't of Taxation & Fin., 82

N.Y.2d 135, 140-41, 623 N.E.2d 1157, 1160-61, 603 N.Y.S.2d 807, 810-11 (1993) (citing cases):

> Because a decision whether to pierce the corporate veil in a given instance will necessarily depend on the attendant facts and equities, the New York cases may not be reduced to definitive rules governing the varying circumstances when the power may be exercised (see, Presser, Piercing the Corporate Veil § 2.33[1], at 2-291—2-293). Generally, however, piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.

Plaintiffs' claim, that contractual liability should be imposed on Mr. Elias, Ms. Senhabar and the other defendant entities through alter ego theory or the doctrine of piercing the corporate veil, is one which has been recognized as "particularly unsuited for resolution on summary judgment:"

> Under New York law, the corporate veil can be pierced where there has been, inter alia, a failure to adhere to corporate formalities, inadequate capitalization, use of corporate funds for personal purpose, overlap in ownership and directorship, or common use of office space and equipment. In any event, this fact-laden claim to pierce the corporate veil is particularly unsuited for resolution on summary judgment.

Forum Ins. Co. v. Texarkoma Transp. Co., 229 A.D.2d 341, 342, 645 N.Y.S.2d 786, 787-88 (App. Div. 1st Dep't 1996) (citing cases) (citations omitted). "Of course, alter ego arguments are 'fact-laden claim[s]' that are 'particularly unsuited for resolution on summary judgment.'" Donald Dean & Sons, Inc. v.

Xonitek Sys. Corp., 656 F. Supp. 2d 314, 321 (N.D.N.Y. 2009) (quoting Texarkoma) (alteration in original).

Those issues as against each other defendant are reserved for trial.

**4.**

Plaintiffs and defendant Mark Hotel also move for summary judgment on defendants' counterclaims that plaintiffs tortiously interfered with their contracts and relationships with their prospective purchasers and lender.

"Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375, 646 N.Y.S.2d 76, 82 (1996) (citing cases). Tortious interference with business relations occurs when: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008). Plaintiffs move for dismissal of those claims, arguing

Mark Hotel failed to raise a genuine issue of fact as to its required elements.  Mark Hotel argues that as a matter of law its claim should be granted.

The gravamen of defendants' claims for tortious interference is that plaintiffs engaged in two programs of action:  first, plaintiffs filed a letter with the Attorney General's office (questioning the legitimacy of certain other purchasers) with the intent to delay the operating plan's effectiveness.  Second, defendants claim plaintiffs deliberately interfered with the closing process for two other apartments, the Campbell Apartment and the Sapphire Apartment, in order to induce those purchasers not to close or to postpone their closing until after May 1, 2009.  According to the defendants, the success of either program would have resulted in the plaintiffs gaining rights to rescind their purchases.  Defendants claim that they suffered damages in the form of lost sales on the Campbell and Sapphire apartments, and that plaintiffs injured the business relationship between Mark Hotel LLC and Anglo Irish Bank Corporation due to the bank's concern with ongoing disputes between the defendants and prospective purchasers.

The emails and communications submitted on these motions show, if they adequately reflect the actual communications, that support for defendants' claims is frail.  Defendants point to

communications between the plaintiffs and their attorneys and the purchasers of the Sapphire and Campbell apartments. Emails and phone calls between the plaintiffs' broker and Ms. Campbell's broker show the purchasers were communicating throughout the time when both the plaintiffs and Ms. Campbell decided not to close. When asked, "Did you share--did you and Mr. Pellegrino share ideas as to how to deal with either the sponsor of the attorney general's office?" Ms. Campbell's attorney, Mr. Cohen, answered "Yes." Braun Decl. Exh. UUUU at 218:11-219:4. The lawyer for Sapphire, Mr. Nihamin, emailed an ominous-sounding message to the Sponsor's attorney, stating (Braun Decl. Exh. VVVV at KLNF0023505) (ellipsis in original):

> Also, for the record and before you get on your high horse, I know what is going on in the building and have spoken with the attorneys for other buyers. We are not the one playing games. My client is well prepared to litigate and we have a very clear record of the facts....despite your assertions to the contrary.

From this, defendants infer collusion and draw some support from the fact that another Sapphire attorney, Mr. Pellegrino, represented not only Sapphire but also plaintiffs.

Nevertheless, the most that can be said for defendants' present submission on this issue is that it barely staves off adverse summary judgment. No specific coercion or persuasion is shown, and it should be decided based on the evidence at trial. Further, questions of the plaintiffs' subjective intent are

crucial to the tortious interference counterclaim, and such factual inquiries are generally inappropriate for resolution on summary judgment. See Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S. Ct. 2727, 2737 (1982) (holding "questions of subjective intent so rarely can be decided by summary judgment"); United States v. City of N.Y., 717 F.3d 72, 82 (2d Cir. 2013) (citing Harlow) (commenting "we note at the outset that questions of subjective intent can rarely be decided by summary judgment").

Summary judgment on defendants' tortious interference claims is therefore denied.

**5.**

Since the parties' motions for summary judgment have been denied, an award of contractual attorney's fees is premature.

**CONCLUSION**

The motions for summary judgment, Dkt. Nos. 81 and 95, are denied.

So ordered.

Dated:  New York, New York
        May 20, 2016

             _____
             LOUIS L. STANTON
             U.S.D.J.